RECEIVED
IN LAKE CHARLES, LA
FEB 15 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY | : | DOCKET NO. 04-2405 |
| VS. | : | JUDGE TRIMBLE |
| DR. CLARK GUNDERSON AND LAKE CHARLES MEMORIAL HOSPITAL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court are three (3) motions: (1) Motion for Summary Judgment (doc. #70) filed by First Health Group Corp., (2) Motion to Strike the Motion for Summary Judgment (doc. #73) filed by defendants, Clark Gunderson and Lake Charles Memorial Hospital, and (3) Motion for Partial Summary Judgment (doc. #79) filed by Liberty Mutual Insurance Co.

## FACTUAL STATEMENT

Liberty Mutual entered into an agreement ("PPO Contract") with First Health Group Corporation ("First Health") whereby First Health agreed to make available to Liberty Mutual various hospitals and medical providers.[1] Defendants, Dr. Clark Gunderson ("Gunderson") and Lake Charles Memorial Hospital ("LCMH") entered into "Provider Agreements" with First Health for the delivery of medical services at discounted rates to "Payors"[2], namely in this suit, Liberty Mutual.[3] Gunderson and LCMH

---

[1] First Health's Exhibit A.

[2] The First Health Provider Agreement defines a "Payor" as:

> An employer, trust fund, insurance carrier, health care service plan, trust, nonprofit hospital service plan, a governmental unit, any other entity which has an obligation to provide medical services or benefits for such services to Participating Patients, or any other entity which

1

have treated numerous employees of Liberty Mutual's insureds/employers in connection with workers' compensation claims. Liberty Mutual paid Gunderson and LCMH the negotiated rates in accordance with the Provider Agreements and the PPO Contract. Gunderson and LCMH, in another suit that was pending before this Court,[4] contend that the contracts they signed do not govern services provided in connection with workers' compensation claims. Gunderson and LCMH asserted in that suit that the payment provision of their Provider Agreements is null and void under the disclosure rules of Louisiana's Any Willing Provider Act, Louisiana Revised Statute 40:2203.1, because Plaintiffs (the preferred provider organizations and third party administrators) failed to comply with the statute's notice provisions. Thus, Gunderson and LCMH, assert that they are entitled to additional monies for medical services performed, in addition to statutory penalties and attorneys' fees.

Liberty Mutual filed this suit requesting that the Court enter a judgment declaring that (1) the Provider Agreements are valid and enforceable, (2) Liberty Mutual is obligated to pay Gunderson and LCMH only the negotiated rates for medical services performed, (3) Gunderson and LCMH are not entitled to be paid amounts in excess of the negotiated rates, (3) Gunderson and LCMH have no cause of action under any law, statute, or regulation against Liberty Mutual, and (5) Gunderson and LCMH's efforts to receive additional monies violate their contracts which constitutes a breach of those contracts, entitling Liberty Mutual to damages and indemnity, including, but not limited to attorneys fees.

In its Second Amended Complaint, Liberty Mutual added as a defendant, First Health. Liberty Mutual alleges that pursuant to the PPO Contract, First Health represented and warranted that all of the

---

has contracted with First Health to use First Health's PPO Plan.

[3] First Health's Exhibits B and C.

[4] *Clark Gunderson, M.D., et al v. F.A. Richard & Associates, Inc., et al*, Docket No. 04 CV 1242; on March 23, 2005, this Court ordered remand of the suit to state court.

2

PPO Contract's terms complied with applicable laws, and that "none of the activities to be performed hereunder ... are or shall be a violation of any applicable law ...."[5] Liberty Mutual maintains that pursuant to the PPO Contract, First Health agreed to "fully indemnify and hold harmless [Liberty Mutual] . . . from and against any and all claims, demands, loss damages, suits, causes of action and administrative proceedings and legal fees incurred in the defense thereof, whether in contract or in tort, arising out of or in connection with any breach of this Agreement by [First Health], or any negligent or wrongful act or omission of [First Health] ... in the performance of its duties under this Agreement."[6]

First Health filed a motion for summary judgment maintaining that because the Provider Agreements are valid and enforceable, First Health is not obligated to indemnify Liberty Mutual. Gunderson and LCMH filed a motion to strike First Health's motion for summary judgment alleging that it seeks a judgment on claims not asserted in the instant action, or alternatively, the indemnity claim against First Health should be dismissed on grounds of prematurity. Liberty Mutual filed a motion for partial summary judgment seeking a declaration against Gunderson and LCMH that the Provider Agreements with First Health are valid and enforceable.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[7] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by

---

[5] Seconded Amended Complaint, ¶ 58.

[6] Seconded Amended Complaint, ¶ 59.

[7] Fed. R.Civ. P. 56(c).

3

demonstrating the absence of evidence supporting the non-moving party's claim."[8] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[9] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[10] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[11] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[12]

## LAW AND ANALYSIS

Because the three instant motions are so intertwined, and for purposes of judicial efficiency, the Court will address each of the motions together. The Court will first address the issue of the validity of the Provider Agreements pursuant to Liberty Mutual's motion for partial summary judgment.

*Is the payment provision of the Provider Agreements between First Health, Gunderson, and LCMH valid and enforceable?*

Liberty Mutual entered into an agreement, the PPO Contract, with First Health whereby First Health agreed to make available to Liberty Mutual various hospitals and medical providers. Gunderson

---

[8] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[12] *Anderson*, 477 U.S. at 249-50.

4

and LCMH directly contracted with First Health through Provider Agreements for the delivery of medical services at discounted rates. The Provider Agreements expressly state that the provider, Gunderson, "agrees to participate in a Preferred Provider Panel (PPO Plan) being created by First Health."[13] Likewise, LCMH also entered into a similar agreement with Affordable Medical Networks,[14] wherein it agreed to be a hospital provider in First Health's PPO network.[15]

Both Gunderson and LCMH agreed to provide their services through First Health's PPO network to certain "Payors", – in this suit, Liberty Mutual – at discounted rates.[16] Gunderson and LCMH agreed that the Payors would be liable only for the negotiated rates as set forth in the Provider Agreements.[17] Both Provider Agreements provided the negotiated discount rates for which the Payors would be liable.[18] Both Providers Agreements expressly stated the negotiated discount rates that applied to "Workers' Compensation Payors"[19] and/or "health care services rendered for occupationally ill/injured employees."[20] Both Provider Agreements obligated First Health to provide a list of "Payors" to Gunderson and LCMH.[21] Gunderson and LCMH have not alleged that First Health did not provide them

---

[13] Plaintiff's Exhibit B, ¶ 1.5.

[14] First Health is a successor in interest to Affordable Medical Networks, Plaintiffs Exhibit C, entitled "Amendment to the Contract between Lake Charles Memorial Hospital Lake Charles, Louisiana and The *Affordable* Medical Networks."

[15] Plaintiff's Exhibit C, ¶¶ 1.5, 1.9, 3.1.

[16] Plaintiff's Exhibit B, ¶ 2.8; Plaintiff's Exhibit C, ¶ 3.1.

[17] Plaintiffs Exhibit B, ¶ 4.2; Plaintiffs Exhibit C, ¶ Article 4.

[18] Plaintiffs Exhibit B, Appendix A; Plaintiffs Exhibit C, Appendix A.

[19] Plaintiffs Exhibit B, Appendix A, ¶ D.

[20] Plaintiffs Exhibit C, Appendix A, p.1.

[21] Plaintiff's Exhibit B, ¶ 1.5 (". . . First Health will supply Provider [Gunderson] with list of all Payors that have entered into Agreements with First Health to utilize Provider's services.");

5

with up-to-date Payor lists. Hence, Gunderson and LCMH were aware that when they treated any of Liberty Mutual's patients, whether in connection with a regular health plan or a work related injury, the PPO Contract and Provider Agreements dictated the negotiated rates these providers would be paid.

Since joining with First Health, Gunderson and LCMH have treated numerous employees of Liberty Mutual's insureds/employers in connection with workers' compensation claims. Liberty Mutual has paid Gunderson and LCMH the negotiated rates in accordance with the Provider Agreements and the PPO Contract. These facts are undisputed.

Gunderson and LCMH contend that because they were not provided with a benefit card as required by Louisiana Revised Statute 40:2203.1, the payment provision of each Provider Agreement is null and void. The statute provides the following pertinent language:

> B. A preferred provider organization's alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser's contractual agreement or agreements and presented to the participating provider when medical care is provided. . . .

Both Liberty Mutual and First Health maintain that this provision does not apply because of the exemption from notice requirement set forth in Louisiana Revised Statute § 40:2201.1A which is as follows:

> A. Except as otherwise provided in this Subsection, the requirements of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part. ***The provisions of this Section shall not apply to a group purchaser when providing health benefits through its own networker or direct provider agreements or to such agreements of a group purchaser.*** (Emphasis added)

Gunderson and LCMH argue that because First Health does not provide health benefits through

---

Plaintiff's Exhibit C, ¶ 3.12 ("AFFORDABLE [First Health] shall periodically provide Contract Hospital [LCMH] with an up-to-date-list of all Payors and shall promptly advise Contract Hospital, in writing, of any changes in the Payor list.")

6

its own network – instead, these benefits were provided by Liberty Mutual - then the exemption does not apply to the Provider Agreements. Likewise, Gunderson and LCMH also argue that because Liberty Mutual utilized someone else's network – First Health's – and Liberty Mutual did not have a direct agreement with either Gunderson or LCMH, the exemption does not apply. We disagree.

The purpose of the PPO statutes is to control the rising costs of providing quality health care benefits.[22] Louisiana courts have long held that a "statute should be construed so as to produce a reasonable result."[23] "The function of the courts is to interpret the laws so as to give them the meaning which the lawmakers obviously intended them to have and not to construe them so as to give them absurd or ridiculous meanings."[24]

A "group purchaser" is defined as "an organization or entity which contracts with providers for the purpose of establishing a preferred provider organization."[25] First Health is a group purchaser. The PPO Contract between Liberty Mutual and First Health is an "agreement of [a] group purchaser [ *i.e.* First Health]. Accordingly, the language of the statute is clear that the notice requirements do not apply to group purchasers when providing health benefits through their own network or *to such agreements of group purchaser.* This is the logical and reasonable interpretation of the statute and is in line with the Legislature's intent to contain escalating health care costs. Furthermore, and more significantly, this was the expectation of the parties when they entered into the PPO Contract and Provider Agreements.

We are further persuaded by First Health's arguments concerning the intent of the legislature

---

[22] La. R.S. 40:2201.

[23] *Bradford v. Louisiana Public Service Comm'n.,* 189 La. 327, 338, 179 So. 442 (1938); *Louisiana Municipal Ass'n. v. State,* 893 So.2d 809, 864 (La.2005).

[24] *Webb v. Parish Council of Parish of East Baton Rouge,* 217 La. 926, 47 So.2d 718, 720 (1950); *Savoie v. Rubin,* 2001-3275 (La. 6/21/02), 820 So.2d 486, 488.

[25] La. R.S. 40:2202(3).

that the notice provision at issue here applies to a "silent PPO" where there is no direct contract between the provider and the PPO. For example, when a PPO (such as First Health) makes an assignment to another PPO network. It is in those instances that the notice requirement provisions of Louisiana Revised Statute § 40 2203.1 become applicable because there is no direct contract between the provider and the PPO assignee.

*Do the Workers' Compensation Laws prohibit discounting below the Fee Schedule?*

Gunderson and LCMH maintain that Louisiana's Workers' Compensation Laws expressly prohibit the use of any contract which "operates to relieve an employer, in whole or in part, of any liability" created by the Louisiana Workers' Compensation Act.[26] Hence, they argue that the discount provision in the Provider Agreements runs afoul of the direct prohibition of such contracts in Louisiana Revised Statute 23:1033, and cannot be used by a Louisiana workers' compensation carrier when paying a workers'compensation bill in the State of Louisiana. We disagree.

Louisiana Revised Statute 23:1033 prohibits a contract that operates "to relieve the *employer*, in whole or in part, from any liability created by this Chapter...." (Emphasis added). In *Jones v. General Motors Corp.*,[27] the Louisiana Supreme Court recognized that an agreement between employer and employee may waive or alter "statutorily established rights" so long as it is "clear and unambiguous." The Court also acknowledged that the Louisiana Workers' Compensation Act " is designed to benefit the injured worker" and read Louisiana Revised Statute 23:1033 to impose a "limitation on a contract which relieves the *employer* of *compensation* liability."[28] The Court does not find that the Provider Agreements have relieved the employer of its compensation liability, and we will not expand the literal

---

[26] La. R.S. 23:1033.

[27] 2003-1766 (La. 4/30/04), 871 So.2d 1109.

[28] *Id*

8

interpretation of this statute.

In further support of this finding is the clear language of Louisiana Revised Statute 23:1034.2(E) which provides the following:

> Nothing in this Section shall prevent a health care provider from charging a fee for such care, services, treatment, drugs, or supplies that is *less than* the reimbursement established by the reimbursement schedule. (Emphasis added)

Furthermore, Louisiana Revised Statute 23:1203(B) provides further support for discounted or lower rates of reimbursement:

> The obligation of the employer to furnish such care, . . . is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, . . . as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 *or the actual charge made for the service, whichever is less.* (emphasis added)

In summary, the Court concludes that there are no prohibitions in the Louisiana Workers' Compensation laws that prevent a provider from agreeing to charge and receive discounted rates for the services they provide to occupationally ill or injured workers.

*Is First Health obligated by contract to indemnify Liberty Mutual?*

In its motion for summary judgment, First Health maintains that it is not and cannot be obliged to indemnify Liberty Mutual for amounts purportedly due to defendants, Gunderson and/or LCMH, or to any other First Health contracted healthcare provider because the Provider Agreements are valid and enforceable as a matter of law and thus create no possibility for casting Liberty Mutual in liability. Under the PPO Contract, First Health agreed to the following:

> . . . to fully indemnify and hold harmless [Liberty Mutual] . . . from and against any and all *claims, demands, loss, damages, suits, causes of action and administrative proceedings* and *legal fees incurred in the defense thereof* whether in contract or in tort, arising out of or in connection with any breach of this Agreement by [First Health], or any negligent or wrongful act or omission of [First Health], or any negligent or wrongful act or omission of [First Health] . . . in the performance of its duties under this

9

Agreement.

As previously held, the Court has determined that the Provider Agreements are valid and enforceable and the Workers' Compensation Laws do not prohibit discounting the providers' service fees below the Fee Schedule set forth in Louisiana Revised Statute 23:1034.2. To the extent that Liberty Mutual seeks indemnity from First Health for additional monies owed Gunderson and LCMH, First Health's motion for summary judgment will be granted as the Court has concluded that no additional monies are owed. As to Liberty Mutual's claim against Fist Health for attorney fees, however, the record establishes that Liberty Mutual made demand upon First Health for a defense and attorney fees, which First Health declined to provide. This action, though initiated by Liberty, was in response to claims being asserted against it by *Gunderson, et al*, and this Court holds that attorney fees so incurred are indemnifiable under the PPO Contract and will be awarded against First Health in this action.

*Is the relief requested by First Health inappropriately before the Court?*

In its motion for summary judgment, First Health seeks judgment in its favor, that it does not owe indemnity to Liberty Mutual because the Provider Agreements are valid and enforceable. In their motion to strike the motion for summary judgment, Gunderson and LCMH maintain that the motion seeks a judgment on claims not asserted in this action, or alternatively, the claims of indemnity are premature. Gunderson and LCMH assert that the claims are not properly before the Court because *Gunderson, et al v. F.A. Richard, et al*, Docket No. 04 CV 1242 was previously remanded back to state court due to improper removal. The *Gunderson, et al v. F.A.Richard* suit did not include Liberty Mutual as a defendant or claims of indemnity against First Health by Liberty Mutual. Furthermore, the indemnity claim is not premature.[29] Be that as it may, because the Court has decided the motion for

---

[29] *See Burns v. McDermott, Inc.*, 665 So.2d 76, 79 (La.App. 1st Cir. 1995)(although fault had not yet been determined, demand for indemnification of attorneys' fees pursuant to indemnity

10

summary judgment filed by Liberty Mutual, this motion is moot and First Health's motion for summary judgment is properly before the Court.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by Liberty Mutual will be granted and the motion for summary judgment filed by First Health will be denied in part and granted in part. The Court concludes that the Provider Agreements are valid and enforceable and Liberty Mutual does not owe defendants, Gunderson and LCMH additional moneys, penalties or attorneys fees. Thus, First Health does not owe Liberty Mutual indemnity for any additional monies that might have been due to these defendants. However, First Health is liable to Liberty Mutual for attorney fees incurred in this action. The motion to strike the motion for summary judgment will be denied as moot.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 15th day of February, 2006.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

provision was not premature); *Celestine v. City of Lake Charles*, 534 So.2d 146, 148 (La.App. 3d Cir. 1988)(issue of liability need not be determined before obligations under indemnity provisions of agreement can be fixed). Also, as noted by Liberty Mutual, this presumes that Louisiana law will apply. The PPO Contract does expressly state that Illinois law applies.