UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY | : | DOCKET NO. 04-2405 |
| VS. | : | JUDGE TRIMBLE |
| DR. CLARK GUNDERSON AND LAKE CHARLES MEMORIAL HOSPITAL | : | MAGISTRATE JUDGE METHVIN |

### MEMORANDUM RULING

Before the Court is a "Motion for Civil Contempt and Sanctions and for Permanent Injunction and Stay of Proceedings Pursuant to the All Writs Act" (doc. #136) filed by Liberty Mutual Insurance Company ("Liberty Mutual") and a "Motion for Civil Contempt and Sanctions and for Permanent Injunction and Stay of Proceedings Pursuant to the All Writs Act" (doc. #146) filed by First Health Group Corp. ("First Health"), wherein the movers seek to permanently enjoin defendants, Clark A. Gunderson ("Gunderson") and Lake Charles Memorial Hospital ("LCMH") from relitigating in the Louisiana state workers' compensation system those factual and legal issues actually decided by this Court's February 15, 2006 Memorandum Ruling and April 12, 2006 Amended Judgment. Liberty Mutual and First Health also seek to hold Gunderson and LCMH in contempt of this Court's "Preliminary Injunction and Stay Order" dated October 30, 2006.[1]

### FACTUAL STATEMENT

For a complete recitation of the facts in this suit see the Memorandum Ruling dated February

---

[1] Doc. #116.

15, 2006.[2]

## PROCEDURAL HISTORY

Pursuant to a motion for summary judgment filed by the Plaintiffs and a motion to strike filed by the defendants to this suit,[3] this Court made the following rulings: (1) the discount provisions in the Provider Agreements between First Health and Gunderson and LCMH are valid and enforceable because there are no prohibitions in the Louisiana Workers' Compensation law that prevent a provider from agreeing to charge and receive discounted rates for the services they provide to occupationally ill or injured workers, and (2) the payment provisions of the Provider Agreement between Liberty Mutual and Gunderson and LCMH are not null and void because Louisiana Revised Statute § 40.2203.1[4] expressly states that the notice requirement provisions shall not apply to group purchasers (First Health) or to agreements of a group purchaser (payors such as Liberty Mutual who have an agreement with First Health).

By Amended Judgment dated April 12, 2006,[5] the Court directed entry of a Final Judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Gunderson and LCMH appealed the ruling to the Fifth Circuit Court of Appeal, however, the appeal was dismissed for lack of jurisdiction on October 6, 2006.[6] Thus, the Amended Judgment is final.

---

[2] Doc. #95.

[3] Docs. #70, 73, and 79.

[4] The Any Willing Provider Act, La. R.S. 40:2201, *et seq.*

[5] Doc. #105.

[6] Doc. #111. Gunderson and LCMH did not appeal the merits of the ruling; they only appealed on jurisdictional grounds.

In response to Gunderson and LCMH's continued prosecution of claims under the Any Willing Provider Act, First Health filed a "Motion for Temporary Restraining Order, Preliminary and Permanent Injunction and Stay of the State Court Proceedings Pursuant to the All Writs Act"[7] on October 24, 2006. On October 30, 2006, this Court issued a Preliminary Injunction and Stay Order granting the temporary restraining order and preliminary injunction which enjoined and prevented defendants, Clark A. Gunderson, M.D. and Lake Charles Memorial Hospital "from pursuing any claim before any court arising under the Louisiana Any Willing Provider Act, La. R.S. 40:2201 et seq. against First Health Group Corporation or any Payor as set forth in the provider agreements between First Health and Defendants. . . ." The Court subsequently denied a "Motion to Vacate" filed by Defendants.[8]

## LAW AND ANALYSIS

*First Health's motion for an injunction and/or stay order*

First Health maintains that Gunderson and LCMH actively seek to relitigate in the Louisiana state workers' compensation system issues fully litigated and decided by this Court, specifically referring to the Court's rulings that (1) Louisiana law, including the Louisiana Workers' Compensation Act, permits discounting of medical bills for treatment rendered to occupationally ill or injured workers, and (2) First Health and its contractual payors are exempt from the notice requirements of Louisiana Revised Statute 40:2203.1(A). First Health seeks a permanent injunction and stay order under the All Writs Act[9] to enjoin Gunderson and LCMH from relitigating in the

---

[7] Doc. #112.

[8] Doc. #128, dated December 7, 2006.

[9] 28 U.S.C. § 1651(a).

3

Louisiana state workers compensation system those factual and legal issues actually decided by this Court's February 15, 2006 Memorandum Ruling and Amended Judgment. First Health also seeks to hold Gunderson and LCMH in civil contempt of the October 30, 2006 Preliminary Injunction and Stay Order.

First Health complains that Defendants continue to file suit, albeit in the Office of Workers' Compensation ("OWC"), against payors that have contracted with First Health, and refuse to dismiss the actions. First Health asserts that the claims are for underpayment of medical bills which seek penalties and attorney fees for arbitrary and capricious handling of the claims.[10] First Health further asserts that each of these suits claims that the PPO contract is unenforceable under Louisiana Revised Statute 40:2203.1 (B) and (D) because of the absence of proper notice as required by the Any Willing Provider Act.

Defendants maintain that First Health is attempting to use a contract to take discounts for occupationally injured workers that was amended as of December 1, 2004 and terminated as of June 14, 2005.[11] The effect of the amended Provider Agreement was to remove workers' compensation from the contract. Even though First Health argues that the June 14, 2005 letter terminated the contract on June 1, 2006 with existing patients terminating August 1, 2006, First Health concedes that they are only seeking an injunction and stay pursuant to the Provider Agreement that was in

---

[10] Plaintiff's Exhibit C includes the following claims: *James Broussard v. Sasol North America, Inc.*, No. 06-00896, filed on behalf of Dr. Clark A. Gunderson; *Rose Provost v. Motel 6*, No. 04-03598, filed on behalf of Dr. Clark A. Gunderson; *Lake Charles Memorial Hospital v. Turner Industries, Ltd.*, No. 04-06615. First Health alleges that these claims are merely illustrative of the several hundred claims filed by Defendants that implicate the First Health agreements.

[11] Defendants' Exhibits B and C.

effect from January 1, 2000 until November 30, 2004. Be that as it may, First Health is correct in that the prior preliminary injunction only applied to claims during the time period when the governing agreement between the parties was effective which is from January 1, 2000 until November 30, 2004. Hence, any permanent injunction could only apply to claims made during this period of time.

Defendants complain that First Health "neglected to inform the Court that they had sent Dr. Gunderson a PPO contract which did not include Appendix 'A' attached to the First Health contract."[12] Thus, Defendants argue that without Appendix A attached to the contract,[13] Gunderson's contract with First Health requires payment of the Louisiana Fee Schedule under Section 4.2(e). In his affidavit,[14] Dr. Gunderson declares that "he is quite certain that the contract he executed with First Health in 2001 did not contain Appendix "A."[15] Dr. Gunderson further declares that "[a]t the time the First Health PPO contract was executed by me, one of my staff members, Leslie Zimmerman, had to call First Health to obtain the reimbursement data. This would not have been necessary if Appendix A was attached. Ms. Zimmerman was never informed by First Health that

Appendix A contained a workers' compensation PPO discount."[16] In rebuttal, First Health

---

[12] Defendant's opposition, p. 6.

[13] Appendix A, among other reimbursements, provides for the discounting of services for workers' compensation patients.

[14] Defendants' Exhibit F.

[15] Appendix A references a PPO discount for workers' compensation and Dr. Gunderson states in his affidavit that he had the copy faxed to him from First Health.

[16] Defendant's exhibit F, p. 2, § § 5, 6.

submits a 2001 File Maintenance Record of Dr. Gunderson that includes an application/contract checklist, a physician application signed by Dr. Gunderson, a workers compensation questionaire signed by Dr. Gunderson, a checklist for a completed application, an application cover sheet and a contract executed by Dr. Gunderson which clearly includes Appendix "A." The application/contract checklist has marked that the record contains a "Correct Appendix A.[17] The Physician application, executed by Dr. Gunderson states that he provides workers' compensation services.[18] The workers' compensation questionaire asks the following question: "My practice is currently open to new workers' compensation patients." There is an "X" marked by the "Yes" column. This questionaire is signed by Dr. Gunderson. The checklist for a completed application states that a "**Signed** original Contract Agreement with Appendix A [is] attached."[19] The application cover sheet which reveals information found to be missing or incomplete remarks that the only document or information missing is "ME - Malpractice Experience."[20] Finally, the signed contract includes Appendix A which contains the reimbursement rates for services rendered to occupationally ill/injured employees.[21] The executed Provider Agreement provides that the "Payor shall be liable for the lesser of the Provider's billed charges or the amount set forth in Appendix A of this Agreement, . . ."[22] Without Appendix A, Dr. Gunderson would not have known what his reimbursement rates

---

[17] Plaintiffs' Exhibit K.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] The one page appendix also includes other reimbursement rates.

[22] Plaintiff's exhibit K, p.5 § 4.2 a) **REIMBURSEMENT PROCEDURE.**

6

would be for any services he provided. The Court finds no merit to Dr. Gunderson's allegation that First Health did not send Appendix A with the contract.

Defendants maintain that First Health is taking unauthorized discounts from a variety of workers' compensation payors who continue to take First Health PPO discounts even though there is no contract to take such a discount. Defendants submit numerous First Health PPO discounts taken by various workers' compensation payors.[23] The Court agrees that if the payors did not have a contract with First Health during the period of time in which Dr. Gunderson had a Provider Agreement that allowed for discounting workers' compensation claim, such discounts are invalid. However, the Court agrees with First Health that out of network EOB's are irrelevant to the injunction that First Health is seeking because it would only apply to payors who had a contract with First Health during the time period Dr. Gunderson and/or LCMH had a Provider Agreement with First Health that allowed discounting for occupationally ill/injured workers.

Defendants assert that claims against many payors also include late payments either pursuant to Louisiana law and/or under the terms of the PPO contract itself. Obviously, the issue of late payment is irrelevant to the injunction being sought by First Health. Defendants are free to pursue any claims for late payment against the payors that are allegedly in violation of either Louisiana law or the PPO contract itself.

Defendants maintain that this Court cannot issue another injunction because First Health has not been made a defendant in any action by Gunderson and LCMH since the October 30, 2006 Preliminary Injunction and Stay Order. Defendants then argue that the All Writs Act only allows an injunction to be brought by someone who was actually a party to the Federal Judgment citing

---

[23] Defendant's exhibit E, in globo.

*Deus v. Allstate Ins. Co.*[24]

The All Writs Act authorizes federal courts "to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[25] This power dovetails with the relitigation exception to the Anti-Injunction Act, which, although generally prohibits federal courts from enjoining state proceedings, it permits a court to enjoin a state court "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[26]

Generally, to obtain a permanent injunction, a petitioner must show "a clear threat of continuing illegality portending immediate harmful consequences irreparable in any other manner."[27] However, to obtain an injunction under the relitigation exception to the Anti-Injunction Act, no independent demonstration of irreparable harm or lack of alternative remedies is necessary. Rather, demonstrating that the matter satisfies the prerequisites of the relitigation exception is sufficient to demonstrate both the harm of continuing the state litigation and the lack of an adequate remedy at law.[28]

The relitigation exception is grounded in principles of *res judicata* and collateral estoppel.[29]

---

[24] 15 F.3d 506 (5th Cir. 1994)

[25] 28 U.S.C. § 1651.

[26] 28 U.S.C. § 2283.

[27] See, *e.g., Posada v. Lamb County*, 716 F.2d 1066, 1070 (5th Cir. 1983).

[28] See, *e.g. Ballenger v. Mobil Oil Corp.*, 138 Fed. App'x 615 (5th Cir. 2005); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 667 (5th Cir. 2003); *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 721 (5th Cir. 1990).

[29] *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684 (1988).

Courts apply the tests used for those doctrines to determine whether an injunction is warranted.[30] "[F]ederal law applies to determine the preclusive effect of a federal judgment in federal court, even for purposes of enjoining state proceedings."[31] To determine whether res judicata precludes relitigation of a claim in a state proceeding, the Court must determine whether: (1) the parties in this action are identical to (or at least in privity[32] with) the parties in the workers' compensation actions; (2) the judgment in this action was rendered by a court of competent jurisdiction; (3) this action concluded with a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits.[33]

This Court has determined that it has jurisdiction over the matter based on complete diversity. The Court has ruled that the workers compensation act does not prohibit discounting for services rendered to occupationally injured/ill patients, and that the notice requirements of the Any Willing Provider Act are not applicable to First Health (as a group purchaser) or to payors that have an agreement with First Health. On October 12, 2006 this Court rendered a final judgment. Hence, the only question remaining is whether or not non-parties to this suit can be included within the scope of this Court's injunction and/or stay order.

Privity has been described as nothing more than a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford

---

[30] *Vasquez*, 325 F.3d at 675-76.

[31] *Duffy & McGovern Accommodation Services v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 830 n.16 (5th Cir. 2006).

[32] See *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1287-88 (5th Cir. 1989) (a district court may include privity of parties within the scope of its injunction).

[33] *Regions Bank v. Rivet*, 224 F.3d 483, 488 (5th Cir. 2000); *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000).

application of the principle of preclusion."[34] Privity exists where, for example, a party's claim is derivative of the original party's claim.[35] To the extent that a payor had a contract with First Health that allowed for discounts to be taken for an occupationally ill/injured worker during the time period in which Dr. Gunderson or LCMH and First Health had a Provider Agreement, the Court finds that privity exists between First Health and that payor which allows said payor to be included within the scope of this Court's injunction and/or stay. In other words, Gunderson and LCMH can not prosecute claims against any payor that had a contract with First Health during the time period (January 1, 2000 - November 30, 2004) in which First Health had a Provider Agreement with either Gunderson or LCMH that involves claims for underpayment for discounting services for workers compensation patients, and/or failing to comply with the notice requirement provisions of Louisiana Revised Statute § 40.2203.1. Accordingly, in order to effectuate this Court's Memorandum Ruling of February 15, 2006 and the Amended Judgment of April, 12, 2006, First Health's motion for a permanent injunction and/or stay will be granted.

*Liberty Mutual's motion for an injunction and/or stay*

Liberty Mutual also seeks to permanently enjoin Gunderson and LCMH from filing or prosecuting claims in the Office of Workers' Compensation involving issues already decided by this Court in the February 15, 2006 Memorandum Ruling and April 12, 2006 Amended Judgment. Liberty Mutual also seeks to have this Court find Gunderson and LCMH in contempt for violating the preliminary injunction dated October 30, 2006.[36]

---

[34] *Southwest Airlines, Inc. v. Texas Intl' Airlines, Inc.* 546 F.2d 84, 95 (5th Cir. 1977).

[35] See *Terrell v. Deconna*, 877 F.2d 1267, 1270-73 (5th Cir. 1989); *Meador v. Oryx Energy Co.*, 87 F.Supp.2d 658, 665 (E.D. Tex. 2000).

[36] Doc. #116.

Liberty Mutual maintains that Gunderson and LCMH have continued to file and prosecute claims against it in the OWC in direct violation of this Court's October 30, 2006 preliminary injunction and a Stay Agreement entered into between First Health and Gunderson and LCMH dated May 7, 2007. Liberty Mutual argues that the claims being sought by Gunderson and LCMH involve the same claims decided by this Court in its February 15, 2006 Memorandum Ruling and April 12, 2006 Final Judgment (the claims involve the validity and enforceability of the Provider Agreements and PPO Contracts). Thus, Liberty Mutual seeks a permanent injunction to cease the filing and prosecuting of these particular claims against it in the OWC.

Counsel for Gunderson and LCMH maintains that on August 29, 2007, he dismissed all claims that Liberty Mutual complains about, thus a preliminary injunction is not necessary. Liberty Mutual points out that these dismissals were without prejudice, which is not enough to preclude issuance of a permanent injunction. Liberty Mutual further asserts that neither the preliminary injunction issued by this Court, nor the Stay Agreement between First Health and Gunderson and LCMH stopped these defendants from filing and prosecuting claims against it. Hence, Liberty Mutual argues that a permanent injunction is indeed necessary. Furthermore, Liberty Mutual argues that the relitigation exception has been satisfied in that res judicata or collateral estoppel would bar the subsequent state litigation. The Court finds that Liberty Mutual's argument has merit and agrees that in order to give this Court's previous Memorandum Ruling and Amended Judgment any effect at all, a permanent injunction and/or stay order is necessary.

*Civil Sanctions*

First Health and Liberty Mutual both seek to have this Court find that defendants, Gunderson and LCMH are in civil contempt for allegedly violating this Court's October 30, 2006 Preliminary

11

Injunction and Stay Order. The Order stated that:

> pursuant to the All Writs Act, 28 U.S.C. § 1651(a), a temporary restraining order and preliminary injunction is hereby issued enjoining and preventing Defendants Clark A. Gunderson, M.D. and Lake Charles Memorial Hospital ("Defendants") from pursuing any claim before any court arising under Louisiana's Any Willing Provider Act, La.R.S. 40:2201, *et seq.* against First Health Group Corporation or any Payor as set forth in the provider agreements between First Health and Defendants, including without limitation pursuing such claims in the matter styled *Gunderson et al v. F.A. Richard, et al.*, Case No 2004-002417 currently pending in the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana.

First Health maintains that notwithstanding this Court's rulings and the preliminary injunction, Gunderson and LCMH have instituted numerous actions against Payors who have contracted with First Health in the Louisiana workers' compensation courts that directly contravene the injunction. First Health argues that the actions raise issues decided by this Court in the February 15, 2006 Memorandum Ruling, and that Gunderson and LCMH refuse to dismiss said actions. First Health seeks to have this court impose an appropriate sanction against these defendants. First Health complains that it has received or been threatened by its payor community with numerous third party demands asserting claims for indemnification (one of these claims has been settled despite this Court's ruling).[37] First Health then complains that it has expended substantial monies defending these indemnity claims, and that more resources will be wasted unless Gunderson and LCMH are enjoined from continuing to prosecute and settle these claims.

Liberty Mutual complains that Gunderson and LCMH violated the Injunction by filing and continuing to pursue claims against it in the OWC. Liberty Mutual seeks attorneys fees and costs

---

[37] See First Health's Exhibit G, Third Party Demand, *James Broussard v. Sasol North America, Inc.*, No. 06-00896,OWC, District 03; Exhibit H, Third Party Demand, *Lake Charles Memorial Hospital v. Albertson's*, OWC, No. 04-07455, District 03.

for filing this motion and for litigating the OWC claims filed by defendants.

Gunderson and LCMH maintain that at the time the injunction was issued, the only claim arising out of Louisiana Revised Statute 40:2201. *et seq.* against First Health or any of its payors was the *Gunderson* suit in the 14th Judicial District Courts, and that counsel for defendants contacted that court in an effort to comply with this Court's Order. Counsel then maintains that "[t]o date, no additional suits arising under LSA-R.S. 40:2201 et seq. have been filed by LCMH and Gunderson against First Health or any payor."[38] Defense counsel argues that his filing and/or pursuing of workers' compensation claims does not violate this Court's Injunction since it does not cover workers' compensation claims and makes no mention of enjoining claims before the Louisiana OWC.

Defense counsel asserts that this Court has held that the Louisiana OWC is not a "court," but is an administrative agency. Thus, counsel argues that because the OWC is an administrative agency, by its own terms the Injunction does not apply to claims before the OWC. Liberty Mutual concedes that the OWC is not a La. Const. Art. V, § 16(A) "court" for all purposes, however, it is a "court of competent jurisdiction" for purposes of the AWPA citing *Southwest Louisiana Hospital Association, d/b/a Lake Charles Memorial Hospital v. Superior Carriers, Inc.*[39]. Given the potential for any possible ambiguity of this Court's intention regarding the Injunction that enjoined Gunderson and LCMH from filing these claims in "any court," the Court will not grant the motions for sanctions filed by First Health and Liberty Mutual. However, the Court will broaden the scope of the permanent injunction to include any claims in any court *or **administrative agency*** in the State

---

[38] Defendants' Opposition, p. 9.

[39] 942 So.2d 754 (La.App. 3 Cir. 2006)

of Louisiana, and any claims that allege that the Louisiana Workers' Compensation Act prohibits discounting of medical bills for treatment rendered to occupationally ill or injured workers.

## CONCLUSION

Based on the foregoing, the motions for civil contempt and sanctions and/or permanent injunction and stay of proceedings will be granted in part and denied in part. The motions for civil contempt will be denied; the motions for a permanent injunction and stay of proceedings will be granted.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 30th day of November, 2007.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE