RECEIVED
IN ALEXANDRIA, LA.
JUN - 3 2009
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, ET AL | : | DOCKET NO. 04-2405 |
| VS. | : | JUDGE TRIMBLE |
| DR. CLARK GUNDERSON, ET AL | : | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Before the Court is "Plaintiffs' Motion for Partial Summary Judgment" (doc. #205) wherein plaintiffs, Liberty Mutual Insurance Company ("Liberty Mutual"), Helmsman Management Services, L.L.C. ("Helmsman"), and Employers Insurance of Wausau ("Wausau") (collectively referred to as the "Liberty entities") move for partial summary judgment in their favor against defendants, Dr. Clark Gunderson ("Gunderson"), Lake Charles Memorial Hospital ("LCMH"), Lafayette Bone and Joint Clinic ("LBJC"), George Raymond Williams, M.D., Orthopaedic Surgery, A Professional Medical L.L.C. ("Williams"), Frank W. Lopez, M.D. ("Lopez"), Joseph Turk, D.C. ("Turk"), COL Management, L.L.C., ("COL"),[1] the Barczyk Clinic, a Professional Chiropractic Corporation ("Barczyk"), Fayez K. Shamieh, M.D., ("Shamieh"), and Beutler-England Chiropractic Clinic ("Beutler"). Plaintiffs are seeking an order from this Court declaring that certain Provider Agreements

---

[1] Defendant, COL, asserts that it previously sold and divested itself of its interest in a number of imaging centers and that it has resolved the issues raised in the instant lawsuit. COL further asserts that the Liberty entities and defendant/providers have agreed that the Liberty entities will submit a motion to dismiss COL, and that the individual imaging centers and/or facilities sold by COL may be substituted as party defendants in COL Management's stead. The Liberty entities have not challenged this assertion. Accordingly, this ruling will not pertain to COL or any of the individual imagining centers and/or facilities.

are valid and enforceable, and that the defendants are not entitled to be paid additional monies for services provided on workers' compensation claims, penalties or attorney's fees by Liberty Mutual, Wausau, and Helmsman.

## FACTUAL STATEMENT

Certain healthcare providers entered into Provider Agreements with First Health for the delivery of medical services at discounted or negotiated rates to insureds/employers of the Liberty Mutual entities.[2] Pursuant to the Provider Agreements, the providers agreed to be reimbursed by the amounts specified in Appendix A of each Provider Agreement; such reimbursement would be payment in full and included medical services performed in connection with workers' compensation claims.[3] The Liberty entities entered into an agreement ("PPO Contract") with First Health Group Corp. ("First Health") wherein First Health agreed to make available to Liberty Mutual, Helmsman, and Wausau various hospitals and medical providers at these negotiated rates.

Since joining with First Health, the defendant/providers have treated numerous employees of Liberty Mutual's and Wausau's insureds/employers, and those entities who contract with Helmsman for related services, in connection with workers' compensation claims. Liberty Mutual, Helmsman, and Wausau paid the providers the negotiated rates in accordance with the Provider Agreements and the PPO contracts.[4]

---

[2] Plaintiffs' exhibits B through K.

[3] *Id.*

[4] The Court notes that defendants allege that there are discrepancies in the timing and the appropriate coding by Plaintiffs for services performed by the providers. For the purposes of this motion only, and because of the irrelevancy of defendants' argument, the Court is only considering

2

*Are the Liberty entities exempt from the notice requirements of Louisiana Revised Statute 40:2203?*

The defendant/providers contend that the Provider Agreements are not enforceable pursuant to the Any Willing Provider Act, Louisiana Revised Statute 40:2201, *et seq.*, because notice was not given pursuant to Louisiana Revised Statute 40:2203.1(B)[5] prior to the rendering of the medical services.

The Liberty Entities maintain that Louisiana Revised Statute 40:2203(A) specifically exempts them from having to comply with the notice requirement in 40:2203.1(B).[6] There is no dispute that First Health is a group purchaser and that it is exempt from the notice requirements. This Court has already held that the PPO contract between Liberty Mutual and First Health is an agreement of a group purchaser [First Health] and that the payment provisions of the Provider Agreements are valid and enforceable.[7]

---

the undisputed fact that the providers were paid in accordance with the Provider Agreements and the PPO contracts without considering whether the payments were properly coded and/or made timely.

[5] La. R.S. § 40:2203.1 provides the following:

B. A preferred provider organization's alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser's contractual agreement or agreements and presented to the participating provider when medical care is provided. . . .

[6] La. R.S. § 40:2203.1 provides the following:

A. Except as otherwise provided in this Subsection, the requirement of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part. The provisions of this Section ***shall not apply to a group purchaser when providing health benefits through its own network or direct provider agreements or to such agreements of a group purchaser.*** (Emphasis added)

[7] Memorandum Ruling and Judgment dated February 15, 2006 (docs. #95 and 96).

Defendant/providers argue that the Liberty Entities are asking this Court to usurp each and every Office of Workers' Compensation claim involving the hundreds of individual payments to the defendant/providers and to evaluate the payments for accuracy of payments. Defendant/providers attempt to create a genuine issue of material fact as to the timeliness of the payments made by the Liberty entities and or violations of the PPO contracts between the Liberty entities and First Health. The Court does not need to consider these alleged contractual violations to determine whether or not the payment provisions of the Provider Agreements are valid and enforceable pursuant to the notice requirements in Louisiana Revised Statute 40:2203 because such allegations of contractual violations are entirely irrelevant.

Defendant/providers also allege that First Health breached provisions of its Provider Agreements by failing to provide a list of all payors that had entered into Agreements with First Health to utilize the providers' services. Defendant/providers further allege other breaches by First Health and/or the Liberty entities of either the Provider Agreements or the PPO Contracts. However, while these may be valid breach of contract claims, they are irrelevant as to the issue of whether or not the Liberty entities are exempt from the notice requirements in Louisiana Revised Statute § 40:2203. Defendant/providers seem to be concerned that our previous judgment which declared that no additional monies are owed by Liberty Mutual encompasses other alleged breaches of contract. Such is not the case; our ruling that no additional monies were owed related solely to whether or not additional monies were owed because of the notice requirements found in § 40:2203 and/or whether or not the Louisiana Workers' Compensation Act prohibited discounting below the Fee Schedule in the Act. The Court finds that for the reasons set forth in the Memorandum Ruling dated February 15,

2006,[8] the notice requirements do not apply to group purchasers (First Health) or to such agreements of group purchasers which includes the agreements between First Health and the Liberty entities.

*Is the discounting in the Provider Agreements prohibited by Louisiana's Workers' Compensation Laws?*

This Court has already ruled that the Louisiana Workers' Compensation Act does not prohibit discounting of medical services for occupationally ill or injured workers. Defendant/providers argue that the Provider Agreements, by their own terms do not allow the Liberty entities to apply discounts below the workers' compensation fee schedule in Louisiana. The Court finds no merit to the defendant/providers' arguments, and for the reasons set forth in the Memorandum Ruling dated February 15, 2006,[9] the Court again concludes that the discounting provided for in the Provider Agreements is not prohibited by Louisiana's Workers' Compensation Act.

*Lafayette Bone & Joint Clinic*

Defendant, Lafayette Bone & Joint Clinic, maintains that neither Liberty Mutual nor First Health have established a contract between First Health and LBJC. LBJC argues that the contract signed by Dr. Blanda, was not signed on behalf of LBJC and/or its members. Additionally, LBJC asserts that Dr. Blanda has not been a member of the First Health Network since December 1, 2007.[10] Plaintiffs assert that Dr. Blanda signed the contract as a proprietor of LBJC and used the Tax Identification Number of LBJC.[11]

---

[8] Doc. #95.

[9] Doc. #95.

[10] Defendants' exhibit A, Blanda affidavit.

[11] Exhibit D-1, at p. 27 attached to Plaintiffs' Memorandum.

The Court has reviewed the contract submitted by Plaintiffs. The contract does not identify LBJC as a party to the contract. In fact § 1.1 of the agreement which identifies First Health as one party leaves blank the identification of the "Provider." Dr. Blanda signed the contract as a proprietor, but did not in any way purport to sign the contract on behalf of LBJC. Accordingly, there is a genuine issue of material fact as to whether or not LBJC entered into a Provider Agreement with First Health.

*Dr. Joe E. Turk*

Defendants maintain that there is a genuine issue of material fact as to whether or not there is a Provider Agreement between Dr. Joe E. Turk and First Health. In his affidavit, Dr. Turk declares that he does not recall entering into the First Health contract. However, Plaintiffs submit Dr. Turk's discovery responses wherein he admits to executing a contract with First Health.[12] Accordingly, Dr. Turk has failed to create a genuine issue of material fact as to whether or not a contract between First Health and Dr. Turk was executed.

*Dr. George Raymond Williams*

Defendants maintain that there is no evidence that Dr. Williams was a part of the Acadiana Physicians Network which contracted with First Health. Liberty Mutual submits as summary judgment evidence the deposition testimony of Monica Williams, Dr. Williams' Orthopaedic Surgery, A Professional Medical L.L.C.'s representative, who testified as to the renewal of a 2006 contract wherein Dr. Williams agreed to be part of the Acadiana Physicians Network ("APN"). Plaintiffs also submit APN's membership list which establishes that Dr. Williams was a part of the APN.[13] Plaintiffs further submit the Provider Agreement between First Health and APN with subsequent amendments

---

[12] Exhibit D-2, no. 1, attached to Plaintiffs' reply memorandum.

[13] Exhibit G attached to Plaintiffs' reply memorandum.

to establish that APN had a contract with First Health.[14] Thus, the Court finds that Plaintiffs have submitted sufficient summary judgment evidence to establish Dr. Williams' participation in the First Health Network through the APN and there is no genuine issue of fact for trial.

## CONCLUSION

Based on the foregoing, the motion for summary judgment will be granted in part and denied in part. The motion will be granted in favor of Liberty Mutual, Helmsman and Wausau against Dr. Clark Gunderson, Lake Charles Memorial Hospital, George Raymond Williams, M.D. Orthopaedic Surgery, A Professional Medical L.L.C., Frank W. Lopez, M.D., Joseph Turk, D.C., the Barczyk Clinic, a Professional Chiropractic Corporation, Fayez K. Shamieh, M.D. and Beutler-England Chiropractic Clinic to the extent that the Provider Agreements with First Health Group Corporation are valid and enforceable because as a group purchaser, First Health and the agreements of First Health, are specifically exempt from the notice provisions of Louisiana Revised Statute § 40:2203.1, and furthermore the Louisiana Workers' Compensation Act, Louisiana Revised Statute § 23:1031 *et seq.* does not prohibit discounting below the Fee Schedule therein.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 3rd day of June, 2009.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[14] Exhibit E attached to Plaintiffs' memorandum.