RECEIVED
IN ALEXANDRIA, LA.
NOV - 2 2009
TONY R. MOORE, CLERK
BY_____
       DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY | : | DOCKET NO. 04-2405 |
| VS. | : | JUDGE TRIMBLE |
| DR. CLARK GUNDERSON, ET AL | : | MAGISTRATE JUDGE METHVIN |

### MEMORANDUM RULING

Before the Court is "First Health Group's Motion for Permanent Injunction" (doc. #351) wherein defendant, First Health Group Corp. ("First Health") seeks a permanent injunction against George Raymond Williams, M.D., Frank W. Lopez, M.D., Joseph Turk, D.C., and The Barczyk Clinic, a Professional Chiropractic Corp., Fayez K. Shamieh and Beutler-England Chiropractic Clinic, defendant-providers in this lawsuit, and Lake Charles Memorial Physician Hospital Organization, Dr. R. Dale Bernauer, England-Masse Clinic, Dr. Kevin Gorin, and Dr. Lynn Foret, defendant-providers in *CCN Managed Care, Inc. v. Fayez Shamieh, AMC,* Docket No. 06-519. The relief sought by First Health is pursuant to the All Writs Act[1] and the re-litigation exception to the Anti-Injunction Act.[2] The purpose of the injunction is to preclude these defendant-providers from re-litigating in either a state court or an administrative agency the issues previously decided by this Court which are(1) whether or not the First Health Provider Agreements are valid and enforceable because there are no prohibitions in the Louisiana Workers' Compensation law that prevent a

---

[1] 28 U.S.C. § 1651.

[2] 22 U.S.C. § 2283.

provider from agreeing to charge and receive discounted rates for the services they provide to occupationally ill or injured workers, and (2) whether or not First Health Group, Inc., as a group purchaser, or such agreements of CCN are exempt from the notice provisions required by Louisiana Revised Statute 40:2203.1

The Defendant-providers oppose the motion maintaining that (1) an injunction against these providers is precluded by the United States Supreme Court's *Rooker-Feldman* doctrine,[3] (2) First Health cannot seek relief from a judgment to which it was not a party or enjoin entities that are not a party to this law suit, (3) the re-litigation exception to the Anti-Injunction Act does not apply, and (4) any injunction in favor of First Health should not include non-party "payors."

## PROCEDURAL HISTORY

On June 3, 2009, the undersigned issued a Memorandum Ruling and Judgment[4] pursuant to a motion for summary judgment filed by declaratory plaintiffs, Liberty Mutual Insurance Company, Helmsman Management Services, LLC, and Employers Insurance of Wausau ("Liberty Entities") wherein the Court found in their favor and against Dr. Clark Gunderson, Lake Charles Memorial Hospital, George Raymond Williams, M.D. Orthopaedic Surgery, A Professional Medical L.L.C., Frank W. Lopez, M.D., Joseph Turk, D.C., the Barczyk Clinic, a Professional Chiropractic Corporation, Fayez K. Shamieh, M.D. and Beutler-England Chiropractic Clinic to the extent that the First Health Provider-Agreements were valid and enforceable because as a group purchaser, First Health and the agreements of First Health are exempt from the notice provisions of Louisiana

---

[3] See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[4] Docs. #315 and 316.

Revised Statute § 40:2203.1, and that the Provider Agreements are valid and enforceable because the Louisiana Workers' Compensation Act, Louisiana Revised Statute § 23:1031, *et seq.*, does not prohibit discounting below the Fee Schedule therein.

Previously, in *CCN Managed Care, Inc. v. Fayez Shamieh AMC, et al*[5], on July 20, 2007, the undersigned issued a Memorandum Ruling and Judgment[6] wherein the Court decided in favor of CCN Managed Care, Inc. ("CCN") and against defendant-providers, Dr. Fayez Shamieh, AMC, Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital, Lake Charles Memorial Physician Hospital Organization, England-Masse Clinic, Dr. R.Dale Bernauer, Dr. Kevin Gorin and Dr. Lynn Foret, concluding that (1) the CCN Provider Agreements were valid and enforceable as a matter of law because there is nothing in the Louisiana Workers' Compensation laws that prevent a provider from agreeing to charge and receive discounted rates for the services they provide to occupationally ill or injured workers,[7] (2) relieving CCN of any obligation to pay these defendants any additional sums, and (3) finding that the CCN Provider Agreements were "direct contracts" specifically exempted from the notice requirements of the Any Willing Provider Act pursuant to Louisiana Revised Statute 40:2203.1 A.[8]

In the *Liberty Mutual* case, the Defendant-providers have filed a notice of appeal as to the Memorandum Ruling and Judgment issued on June 3, 2009 and the June 23, 2009 order which

---

[5] Docket no. 06-519

[6] Docs. #85 and 86.

[7] See Memorandum Ruling, doc. #85, pp. 22-24.

[8] The judgment also denied a motion to compel arbitration filed by the defendant-providers.

certified the judgment as "final" pursuant Federal Rule of Civil Procedure 54(b) as well as any and all interlocutory orders.[9]

In the *CCN* case, Plaintiff moved to voluntarily dismiss its remaining claims with prejudice and sought entry of final judgment which was granted on February 2, 2009.[10] After the undersigned denied a motion for consideration,[11] the Defendant-providers filed a notice of appeal as to the ruling on the motion for summary judgment, the voluntary dismissal and entry of final judgment, and the order denying the motion for reconsideration.

## LAW AND ANALYSIS

*Is the proposed injunction precluded by the Rooker-Feldman doctrine?*

Defendant-providers complain that this Court is seeking to enjoin the state court class action that it previously remanded for lack of jurisdiction, and that the proposed injunction would impact the appeal of the state court judgment rendered against First Health in the amount of $261,862,000.00.[12] Defendant-providers argue that such a "collateral attack" on the state court judgment is precluded by the United States Supreme Court's *Rooker-Feldman* doctrine.[13]

In *Rooker* plaintiffs previously defeated in state court filed suit in Federal District Court

---

[9] Doc. #340.

[10] Doc. #148.

[11] Doc. #152.

[12] Defendant-providers' Exhibit A.

[13] See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

4

alleging that the adverse state-court judgment was unconstitutional.[14] Plaintiffs sought to have the state-court judgment declared "null and void."[15] *Rooker* recognized that Federal District Courts are empowered to exercise only original, not appellate, jurisdiction.[16] The *Rooker* court found that "[b]ecause Congress has empowered this Court alone to exercise appellate authority "to reverse or modify" a state-court judgment, the Court affirmed a decree dismissing the federal suit for lack of jurisdiction."[17]

In *Feldman*, after the District of Columbia's highest court denied their petition to waive a court Rule requiring D.C. bar applicants to have graduated from an accredited law school, two plaintiffs filed federal-court actions.[18] The Supreme Court concluded that the Federal District Court lacked subject-matter jurisdiction because a review of a final judicial determination of the D.C. high court could be obtained only by it.[19]

In *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*,[20] in analyzing the *Rooker-Feldman* doctrine, the Supreme Court held that the:

> doctrine is confined to cases of the kind from which it acquired its name; cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not

---

[14] 263 U.S. at 414-415, 44 S.Ct. 149.

[15] *Id.*

[16] *Id.,* at 416, 44 S.Ct. 149.

[17] *Id.,* at 417, 44 S.Ct. 149.

[18] *Feldman*, 460 U.S. at 476, 103 S.Ct. 1303.

[19] *Id.*

[20] 544 U.S. 280, 125 S.Ct. 1517 (2005).

otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines allowing federal courts to stay or dismiss proceedings in deference to state-court actions.[21]

The Court stated that "[w]hen there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in Federal court having jurisdiction.' "[22] Neither "*Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court."[23] In so holding, the Supreme Court recognized that the *ExxonMobil* plaintiffs filed suit in Federal District Court (only two weeks after the state court suit was filed by Saudi Basics Industries Corporation and well before any judgment in state court) to protect itself in the event it lost in state court on grounds that might not preclude relief in the federal venue.[24] Furthermore, "*Rooker-Feldman* did not prevent the District Court from exercising jurisdiction when ExxonMobil filed the federal action, and it did not emerge to vanquish jurisdiction after ExxonMobil prevailed in the [state] courts."[25] Accordingly, the Court concludes that the *Rooker-Feldman* doctrine is not applicable to the instant case.

*Can First Health obtain an injunction against the CCN v. Shamieh, et al*[26] *Defendant-providers of*

---

[21] *Id.* at 281.

[22] *Id.* at 292. (Citations omitted)

[23] *Id.*

[24] *Id.* at 293-294.

[25] *Id.*

[26] Docket no. 06-519.

6

*which it was not a party?*

The Defendant-providers maintain that First Health cannot obtain an injunction in this lawsuit against Lake Charles Memorial Physician Hospital Organization, England-Masse Clinic,[27] Dr. R. Dale Bernauer, Dr. Kevin Gorin, Dr. Fayez Shamieh, AMC,[28] and Dr. Lynn Foret, defendant-providers in the *CCN* litigation of which this Court also presides over, because First Health is not a party to that action. Defendant-providers assert that First Health and CCN were separate and distinct entities when the contracts were executed, and that the CCN contracts are not identical to the First Health contracts.

Defendant-providers argue that there is no legal support for First Health's requested relief based on the CCN judgment citing *Taylor v. Sturgell*,[29] which they argue prevents a judgment against non-parties whose interests were not adequately represented and protected. The CCN Defendant-providers further argue that First Health has presented no evidence that they had any notice that their interests would also be litigated in this case as to First Health. The CCN Defendant- providers remind the Court of our previous ruling in the CCN case regarding a motion for reconsideration of a Judgment against them wherein we stated that the "ruling on the declaratory action [involving CCN] will have no effect on contracts signed on behalf of First Health.[30]

In the *CCN* litigation after this Court rendered judgment against the Defendant-providers and

---

[27] The England-Masse Chiropractic Clinic is also a defendant-provider in the instant litigation.

[28] Dr. Shamieh is also a Defendant-provider in this litigation.

[29] 128 S.Ct. 2161, 2171 (2008).

[30] *CCN v. Shamieh, et al*, Docket no. 06-519, doc. #152.

made the declaratory judgment final. Defendant-providers filed a motion for reconsideration and argued that the final judgment was barred by the Anti-Injunction Act[31] because CCN Managed Care, Inc. had voluntarily merged with First Health in December 2006. First Health was a named defendant in the class action proceeding in Louisiana state court, *Gunderson, et al v. F.A. Richard & Assoc., et al*,[32] and the Defendant-providers in the *CCN* litigation were either a named Plaintiff or members of the certified Plaintiff Class in the *Gunderson* action. This Court denied the motion for reconsideration[33] after considering CCN's arguments that when the case was filed (March 28, 2006), CCN and First Health were separate entities which maintained different networks, had distinct rates of reimbursement with health care providers and distinct contractual relationships with their clients. Furthermore, the First Health Provider Agreements were not at issue in the *CCN* litigation. Relying on Federal Rule of Civil Procedure 25(c) which is procedural and does not affect the substantive rights of the parties, and state law jurisprudence concerning corporations and their continued existence after a merger,[34] we found no basis for requiring First Health to be substituted for CCN. We also relied on the fact that the contracts at issue in the *CCN* litigation were signed on behalf of CCN as a separate and distinct entity and concluded that our ruling in the *CCN* litigation would have no effect on the contracts signed on behalf of First Health.

---

[31] 28 U.S.C. § 2283.

[32] Docket No. 04-1242.

[33] Docket No. 06-519, Doc. #152.

[34] Fed. R.Civ. P. 25(c) provides that:

> [i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

First Health argues that the permanent injunction against the *CCN* Defendant-providers is proper because in the *Liberty Mutual* case, we granted First Health's motion for preliminary injunction against Defendant-provider, Beutler-England Chiropractic Clinic, based on a motion for summary judgment granted in favor of *Liberty Mutual* and against Lake Charles Memorial Hospital and Dr. Clark Gunderson.[35] However, this Court found that the injunction was proper because the named Defendant-provider had been afforded the appropriate due process. Not only was Beutler-England a party in the *Liberty Mutual* case, (Beutler-England was not the filer or a participant of the motion for summary judgment rendered in favor of *Liberty Mutual*), but it was also a defendant in the *CCN* litigation in which substantially identical issues were resolved against it. In summary, Beutler-England was a party to the *Liberty Mutual* suit and had vigorously, but unsuccessfully defended the same issues in the *CCN* litigation. Thus, the Court concluded that Beutler-England had been afforded due process, not only because it was a party to the *Liberty Mutual* case, but also because it had defended and lost the issue in the *CCN* litigation.

First Health further argues that collateral estoppel extends not only to named parties but to those in privity with the named parties citing *Nevada v. United States*,[36] and that for purposes of injunctive relief, subsidiaries and parent entities are routinely found in privity with each other.[37] First Health also cites *United States v. Mollier,* which held that "[i]f a litigant has fully and fairly litigated an issue, third parties unrelated to the original action can bar the litigant from re-litigating that same

---

[35] Doc. #281.

[36] 463 U.S. 110, 130, 103 S.Ct. 2096 (1982).

[37] citing *United States v. Phillip Morris USA, Inc., et al,* 566 F.3d 1095, 1136 (D.C. Cir. 2009); *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha,* 58 F.3d 616 (C.A.Fed. Del. 1995).

issue in a subsequent suit through the principle of non-mutual collateral estoppel."[38]

In *United States v. Mollier*,[39] the court explained defensive collateral estoppel as follows: if "A" sues "B" and loses on issue "X", then "C" can avail itself of an estoppel against "A" on issue "X" if "A" sues "C".[40] The court further explained the offensive use of collateral estoppel as follows: if "A" sues "B" and "B" loses on issue "X", then (with some exceptions), "C" can sue "B" and prevail on issue "X" by operation of collateral estoppel.[41]

"The requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard."[42]

First Health is attempting obtain an injunction in this suit against the *CCN* Defendant-providers by using the collateral estoppel doctrine against them. In the *CCN* litigation, the Defendant-providers lost and now First Health who was not a party to that suit is attempting to assert that ruling concerning the CCN Provider Agreements via a permanent injunction against these Defendants-providers. To complicate matters further, First Health is not a plaintiff in this suit, but

---

[38] 853 F.2d 1169, 1175 n.7 (5th Cir. 1988)(the principle of non-mutual collateral estoppel is that if a litigant has fully and fairly litigated an issue and lost, then third parties unrelated to the original action can bar the litigant from re-litigating that same issue in a subsequent suit); *Gibson v. United States Postal Service, et al.*, 380 F.3d 886, 890 (5th Cir. 2004).

[39] 853 F.2d 1169 (5th Cir. 1988).

[40] Citing *Blonder-Tongue Laboratories, Inc., v. Univ. of Ill. Found.*, 402 U.S. 313, 321-35, 91 S.Ct. 1434, 1439-46 (1971).

[41] Citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329-31, 99 S.Ct. 645 650-652 (1979).

[42] *Blonder-Tongue Laboratories, Inc.*, 402 at 329, 91 S.Ct. at 1443.

was named as a defendant by *Liberty Mutual* who alleged contractual claims of indemnity against First Health. First Health, however, is a defendant in the state court class action suit wherein the Defendant-providers are either plaintiffs or members of a certified class. In the state court action, after the ruling by this Court that the Provider Agreements are valid and enforceable and that group purchasers such as First Health are exempt from the notice provisions,[43] judgment was rendered against First Health in the amount of $261,862,000.00. That ruling is currently on appeal to the Third Circuit Court of Appeal.

Furthermore, in December 2006, CCN Managed Care and First Health merged, however, the Provider Agreements at issue in the *CCN* litigation were executed when CCN and First Health were separate and distinct entities. The First Health Provider Agreements were also executed at a time when the two entities were separate and distinct. Even though the Provider Agreements may have somewhat different terms, as noted by the Defendant-providers, the issues resolved by this Court in both the *CCN* litigation and the *Liberty Mutual* litigation are the same.

The offensive collateral estoppel doctrine has been and can be used by a third party who sues the "loser" defendant. However, First Health has not sued these Defendant-providers, nor are they parties to this lawsuit. Instead First Health is attempting to obtain an injunction by "piggybacking" off of Liberty Mutual and CCN in two separate lawsuits. To this Court's knowledge, the collateral estoppel doctrine has never been utilized as a basis for a permanent injunction against non-parties. Thus, based on this Court's sense of justice and equity,[44] the Court finds that it will not allow First Health to enjoin parties of another lawsuit relying on a judgment in that lawsuit to which it was not

---

[43] LSA- R.S. § 40:2203.1

[44] *Blonder-Tongue Laboratories, Inc.,* 402 U.S. at 334, 91 S.Ct. at 1445.

11

a party.

*Does the re-litigation exception to the Anti-Injunction apply?*

The Defendant-providers maintain that the Anti-Injunction Act does not apply because there is not a final judgment in favor of First Health. First Health relies on the Judgment rendered June 3, 2009;[45] the Judgment was certified as final by Order dated June 23, 2009 as to defendants, Dr. Clark Gunderson, Lake Charles Memorial Hospital, George Raymond Williams, M.D. Orthopaedic Surgery, A Professional Medical L.L.C., Frank W. Lopez, M.D., Joseph Turk, D.C., the Barczyk Clinic, a Professional Chiropractic Corporation, Fayez K. Shamieh, M.D. and Beutler-England Chiropractic Clinic. The subject of the motion for summary judgment filed by Liberty Mutual involved the First Health Provider Agreements. First Health did not file the actual motion, consequently, the Defendant-providers argue that the judgment was not in their favor and thus, they cannot seek an injunction pursuant to the Anti-Injunction Act..

The courts utilize a four-part test to determine whether the re-litigation exception to the Anti-Injunction Act applies to preclude litigation of a claim in state court.[46] Specifically,

> (1) the parties in a later action must be identical to (or at least in privity with) the parties in a prior action; (2) the judgment in the prior action must have been rendered by a court of competent jurisdiction, (3) the prior action must have concluded with a final judgment on the merits, and (4) the same claim or cause of action must be involved in both suits.

The Court concludes that it would be a waste of judicial resources for First Health to file the exact same motion in this lawsuit which this Court would obviously grant for the exact same reasons

---

[45] Doc. #316.

[46] See *Regions Bank v. Rivet,* 224 F.3d 483 (5th Cir. 2000).

provided in the Memorandum Ruling dated June 3, 2009. There is no doubt that First Health is a party to this lawsuit and was in privity with both the Defendant-providers and the Liberty Mutual Entities through the Provider Agreements and the PPO contracts. Accordingly, the re-litigation exception to the Anti-Injunction Act is applicable.

*Does the injunction apply to non-party "payors"?*

The Defendant-providers maintain that the injunction should not be extended to the unidentified "payors" of the Liberty Entities[47] because there has been no evidence submitted as to who they are. The Fifth Circuit has already decided that privity exits between parties to a PPO contract and a Provider Agreement.[48] Specifically, the court held that:

> this court finds that First Health and its "payors" are in privity with Liberty Mutual. "Privity is a 'legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.' " As this Court explained in *Howell Hydrocarbons, Inc. v. Adams,* a party is in privity with a party for *res judicata* purposes "if the party adequately represented his interest in the prior proceeding."[49] Liberty Mutual and other "payors" entered into Provider Agreement contracts with First Health. Liberty Mutual and First Health actively disputed Gunderson's claims that (1) the discount provisions contained in the Provider Agreements are unenforceable, and (2) that the payment provisions contained in the Provider Agreements do not apply to group purchasers or to agreements of group purchasers. The contractual relationship between First Health and its payors, as well as identical litigation position against Gunderson in suits over these contractual provisions, evidence to this Court that First Health and its "payors" are in privity with Liberty Mutual.[50]

---

[47] Liberty Mutual Insurance Company, Helmsman Management Services, LLC and Employers Insurance of Wausau.

[48] *Liberty Mutual Ins. Co . v. Gunderson,* 305 Fed.Appx. 170 (5th Cir. 2008).

[49] 897 F.2d 183, 188 (5th Cir. 1990).

[50] *Liberty Mutual Ins. Co.,* 305 Fed.Appx. at 176.(citations omitted)

The Court is aware that there may be "payors" that have improperly taken discounts pursuant to the CCN Provider Agreements. The Court is just as concerned with "payors" who are part of a contractual chain that would include a "silent PPO" which would not be exempt from the notice provisions in Louisiana Revised Statue § 40:2203.1.

The Court is aware that there may be "payors" that potentially have improperly taken discounts through the CCN Network. The Court is just as concerned with "payors" who are part of a contractual chain that would include a "silent PPO" which would not be exempt from the notice provisions in Louisiana Revised Statue § 40:2203.1.

The injunction will apply to the First Health Provider Agreements at issue in this case. The injunction will apply to " authorized payors" who can establish a contractual relationship with First Health and who can be properly identified in the payor lists pursuant to the First Health Provider Agreements.

## CONCLUSION

Based on the foregoing, the motion for a permanent injunction will be granted in part and denied in part. The motion will be granted in favor of First Health to the extent that the permanent injunction will be against only the Defendant-providers in this lawsuit; the permanent injunction will also be against "authorized payors" as previously discussed; the motion will be denied to the extent that the permanent injunction will not include the Defendant-providers in the *CCN v. Shamieh, et al* litigation, Docket no. 06-519. Furthermore, the permanent injunction will be limited in scope only as to the specific rulings made by this Court in the June 3, 2009 Judgment.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 2nd day of November, 2009.

*/s/ James T. Trimble, Jr.*
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE